UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEORGE REYES,<br><br>　　　　Petitioner,<br><br>　　　　v.<br><br>AMY MILLER,<br><br>　　　　Respondent. | NO. CV 14-1548-JAK (AGR)<br><br>ORDER ACCEPTING FINDINGS AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE |

　　　　Pursuant to 28 U.S.C. § 636, the Court has reviewed the Petition, the other records on file herein, the Report and Recommendation of the United States Magistrate Judge and the Objections.  Further, the Court has engaged in a *de novo* review of those portions of the Report and Recommendation to which objections have been made.  The Court accepts the findings and recommendation of the magistrate judge.

　　　　In Ground One, Petitioner asserts that trial counsel was ineffective in failing to request a non-statutory involuntary manslaughter instruction as set out in CALCRIM 626.  The desired instruction permits a conviction for involuntary manslaughter if the jury finds beyond a reasonable doubt "1.  The defendant killed without legal justification or excuse; 2.  The defendant did not act with the

intent to kill; 3. The defendant did not act with a conscious disregard for human life; and 4. As a result of voluntary intoxication, the defendant was not conscious of his actions or the nature of those actions." CALCRIM 626. Unconsciousness "can exist 'where the subject physically acts but is not, at the time, conscious of acting.'" *People v. Halvorsen*, 42 Cal. 4th 379, 417 (2007).

Looking through the California Supreme Court's summary denial of this claim, the magistrate judge referred to the trial judge's opinion denying the claim on state habeas. The trial court found that Petitioner failed to show prejudice under *Strickland v. Washington*, 466 U.S. 668 (1984). "Assuming arguendo that trial counsel had requested CALCRIM 626 based on theory of unconsciousness, there is no evidence to support the issuance of that instruction to the jury. The record is devoid of any evidence that the Petitioner drove in a state of unconsciousness induced by voluntary intoxication that a trial court could find as 'substantial' warranting the issuance of that instruction." (LD 6 at 1.)

Preliminarily, to the extent Petitioner disputes whether he was driving the car at the time of the collision (Objections at 6), evidence that Petitioner was not the driver clearly could not support the giving of an instruction predicated on Petitioner driving while unconscious.

In his Objections, Petitioner also argues that "a defendant might begin drinking not intending to drive, as the evidence shows here, but then drink[] to the point of unconsciousness and in that unconscious state, not knowing what he or she is doing, drive[]." (Objections at 8.)

During a hearing on pretrial motions, the prosecutor raised a motion regarding unconsciousness based on voluntary intoxication. (LD 11 at 14-15.) The court asked defense counsel: "I don't think you were going that way, Mr. Lofton?" (*Id.* at 15.) Defense counsel responded: "No not at this point." (*Id.*)

The state court's decision was not contrary to, or an unreasonable application of, clearly established federal law and was not an unreasonable

2

determination of the facts. The collision occurred shortly after Petitioner left his friends' residence at around 2:30 a.m. and within a few miles. Petitioner's friends, Oscar and Mary,[1] testified that Petitioner appeared sober when he and his girlfriend arrived. (LD 11 at 77, 106.) Petitioner and Oscar spent five to six hours drinking beer and reminiscing. Oscar estimated Petitioner had about six 12 oz. beers. (*Id.* at 75-77.) Petitioner stopped drinking at about 1:00 a.m. (*Id.* at 80.) When Petitioner left at about 2:30 a.m., he did not appear to be under the influence. Petitioner was not slurring his words, stumbling or acting crazy. (*Id.* at 87, 89, 101, 111, 113-14, 130-31.) Petitioner appeared happier and funnier than usual. (*Id.* at 79, 110.) Oscar and Mary offered to have Petitioner and his girlfriend stay over because of the late hour, but they declined. They said they were going to Petitioner's parents' home 6-7 miles away. (*Id.* at 80-81, 129.) Petitioner walked on his own to the car, hugged Mary, and said he would see her at Petitioner's father's birthday party the next day. Petitioner got into the passenger seat, put on his seat belt, waved goodbye, reclined his seat and turned on the radio. Petitioner's girlfriend got into the driver's seat and asked for directions (she had never been to Oscar and Mary's home before). (*Id.* at 84, 114-15, 119, 131, 133.) Mary called Petitioner's phone 10-15 minutes later but got no answer. (*Id.* at 119.) Police responded to a call about an overturned vehicle at 3:00 a.m. (*Id.* at 136-37.) At 5:14 a.m., Petitioner's blood alcohol level was .21 percent. (*Id.* at 363-64.)

    The evidence regarding Petitioner's demeanor and actions shortly before the collision does not support the giving of an unconsciousness instruction. On the contrary, the evidence indicates Petitioner's awareness of his surroundings and purposeful behavior. There is no evidence that Petitioner consumed additional alcohol or other substance after he left Oscar and Mary's residence.

---

[1] Because Oscar and Mary have the same last name, this order uses their respective first names for ease of reference.

Office Taggart testified that, in the area of the collision, it was pitch black with no streetlights. (*Id.* at 301.) Officer Taggart opined that the car had been traveling at about 76 miles per hour. (*Id.* at 320, 343, 345.) He opined that the car went from the number one lane over to the right shoulder. The driver pulled the wheel in the opposite direction. The car spun out, hit the curb, tripped and rolled over an estimated 3½ times, and landed upside down approximately 78 feet from the edge of the road. (*Id.* at 315-19, 325, 352.)

When police found the overturned car, the passenger door was closed and the window was broken out. No one was in the passenger seat. (*Id.* at 141-42.) Looking into the car from the passenger side, Deputy King saw a male Hispanic behind the wheel with the seat belt still buckled. (*Id.* at 145-47.) In order for a paramedic to remove Petitioner from the car, the paramedic had to unbuckle the Petitioner's seat belt in the driver's seat. (*Id.* at 227, 235, 237, 249.) Only the driver's seat belt showed evidence of "occupant loading," which refers to the belt restraining a body. The passenger seat belt showed no signs of occupant loading. (*Id.* at 286-90.) Petitioner's girlfriend's body was found 30-40 yards from the vehicle with injuries consistent with having been ejected from a vehicle. (*Id.* at 241, 264-68.) In order for Petitioner to have become the driver, Petitioner would have had to unbuckle his seat belt, switch seats with his girlfriend, buckle his seatbelt in the driver's seat, and drive off. Such actions by Petitioner also indicate Petitioner's awareness of his surroundings, volition and physical coordination, and do not support the giving of an unconsciousness instruction. Sergeant Wright testified that after Petitioner was removed from the car, Wright asked whether there had been anyone else in the vehicle. Petitioner nodded his head and raised one finger. (*Id.* at 218-19.)

Petitioner argues that he had no memory of the collision afterwards. This is not sufficient to warrant the giving of CALCRIM 626. *Halvorsen*, 42 Cal. 4th at 418-19 (finding unconsciousness instruction was unwarranted despite memory

4

loss); *People v. Ferguson*, 194 Cal. App. 4th 1070, 1082-85 (2011) (finding unconsciousness instruction unwarranted because evidence did not support unconsciousness or lack of awareness of actions leading up to accident despite fact that driver did not remember accident).

Petitioner argues that he suffered prejudice because the jury sent out a note that read: "What are the DMV Laws and requirements for someone in the car over the age of 18? [¶] The jury is asking to lessen the charge? Or is there other options? [¶] Does the seat belt laws of a person over 18 have any relevance to this case." (LD 9 at 148.) Petitioner contends, therefore, that the jury might have accepted the lesser charge had the trial court instructed the jury with CALCRIM 626. Petitioner's argument is wholly speculative. The analysis under *Strickland*, however, may not be evaluated in hindsight. *Strickland*, 466 U.S. at 689.

Petitioner's remaining objections are unpersuasive.

IT THEREFORE IS ORDERED that Judgment be entered denying the Petition and dismissing this action.

DATED: September 29, 2016

JOHN A. KRONSTADT
United States District Judge